# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Katherine A. G.,                                        Civ. No. 21–411 (BRT)

      Plaintiff,

v.                                                              **MEMORANDUM OPINION
                                                                   AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of
Social Security,

      Defendant.

---

Kirk C. Thompson, Esq., Kirk C. Thompson Law Office; and Wes Kappelman, Esq., Kappelman Law Firm, counsel for Plaintiff.

Chris Carillo, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. For the reasons set forth below, Plaintiff's motion is granted in part, Defendant's motion is denied, and the case is remanded for further proceedings.

## DISCUSSION

In the underlying case, the Administrative Law Judge ("ALJ") followed the five-step evaluation process. At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether

the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 1, 2016, Plaintiff's alleged disability onset date. (Tr. 161.)[1] At step two, the ALJ found that Plaintiff has the following severe impairments: Degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of bilateral knees and shoulders; and obesity. (*Id*.) At step three, the ALJ determined that Plaintiff does not have any impairments or combination of impairments that meets or medically equals to severity of one of the listed impairments. (*Id*.) The issues on appeal now before the Court relate to the ALJ's RFC determination and the resulting findings at steps four and five.

On appeal, Plaintiff first contends that the ALJ committed error by failing to assign any weight to Dr. McPherson's Independent Medical Examination ("IME") report.

---

[1]      Throughout this Memorandum Opinion and Order, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 22.)

Plaintiff visited Dr. McPherson for purposes of providing evidence for a workers'
compensation claim within the relevant time period. (Doc. No. 24, Pl.'s Mem. 32.)
Defendant argues that Dr. McPherson did not actually render a medical opinion and thus
no weight needs to be given the doctor by the Commissioner. (Doc. No. 26, Def.'s Mem.
12.)

This Court disagrees with Defendant. Dr. McPherson conducted an in-person
physical examination, reviewed and discussed Plaintiff's medical history, and later
opined regarding Plaintiff's physical capabilities and limitations as of June 13, 2017.[2]
(*See* Tr. 979–90.) As Defendant noted, a statement that discusses the particular activities
an individual can do is a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2) ("A medical
opinion is a statement from a medical source about what you can still do despite your
impairment and whether you have one or more impairment-related limitations or
restrictions in the following abilities: . . . sitting, standing, walking, lifting, carrying,
pushing, pulling or other physical functions."). Thus, Dr. McPherson's IME report is a
medical opinion that the ALJ was required to address. *See* 20 C.F.R. § 404.1527
("Regardless of its source, we will evaluate every medical opinion we receive.")

In addition, the ALJ is required to "articulate in [her] determination or decision
how persuasive [she] find[s] all of the medical opinions and all of the prior administrative

---

[2]     Plaintiff filed her application on September 19, 2017, with an alleged onset date of
January 1, 2016. While the IME report was created in June 2017 in connection with a
workers' compensation claim, it is also within the relevant period for this Social Security
claim and was a part of the record before the ALJ.

medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). "That a medical opinion was issued in connection with another disability proceeding does not change this general rule." *Slater v. Kijakazi,* No. 20-CV-4038-KEM, 2022 WL 884920, at *4 (N.D. Iowa Mar. 24, 2022). Here, the ALJ made no mention of Dr. McPherson.

Further, the ALJ's blanket statement that she found the workers' compensation opinions not persuasive is insufficient. *See M.A. v. Kijakazi,* No. 21-CV-946 (JFD), 2022 WL 2835041, at *9 (D. Minn. July 20, 2022) ("In the instant case, the ALJ did not evaluate Dr. Nelson's opinion separately but reduced the weight of all workers' compensation reports and opinions because they were issued in the workers' compensation context. The law does not support that across-the-board determination."); *see also*, *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statements' will not do."). This conclusory statement does not show the Court that the ALJ fully considered Plaintiff's impairments. Therefore, for these reasons, remand is required for the ALJ to consider and weigh Dr. McPherson's opinions.

Moreover, the Court's review of the ALJ's residual functional capacity ("RFC") determination shows that the ALJ failed to properly address any necessary restriction for overhead lifting – a limitation addressed by Dr. McPherson in his report.[3] "The RFC is a

---

[3]    Dr. McPherson reviewed Plaintiff's medical record that placed "permanent restrictions of avoiding overhead lift greater than five pounds or repetitive overhead use of the left arm" and the functional capacity evaluation that indicated "shoulder to overhead level nothing above five pounds on an occasional basis." (Tr. 983, 986.) After conducting a physical examination, Dr. McPherson reported that "[Plaintiff] demonstrated mild Hawkins sign on the left side and mild positive Neer findings on the

function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004). In determining the RFC, the ALJ should consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [the] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Further, when considering a medical opinion for purposes of determining the RFC, supportability and consistency of that opinion are the "most important factors" to be considered; therefore, an ALJ must explain how she considered these factors in the decision. *See* 20 C.F.R. § 404.1520c(b)(2). "[W]hen the ALJ's RFC assessment 'conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.'" *Slater*, 2022 WL 884920, at *4 (citation omitted).

Here, the ALJ determined that Plaintiff had the RFC to perform "light" work with the limitation for "only occasional overhead reaching bilaterally." [4] (Tr. 162.) In making

---

left side as well." (Tr. 988.) Dr. McPherson concluded that "[Plaintiff] has sustained a 6% permanent partial disability rating for her left shoulder condition. The lifting and limited overhead restrictions as outlined in the functional capacity evaluation would be appropriate for [Plaintiff]'s left shoulder condition." (Tr. 989.) Dr. McPherson also opined that same limitation is appropriate for overhead use on the right shoulder. (Tr. 990 ("Relative to her personal developmental right shoulder condition, I believe the restrictions outlined for lifting and overhead use would be appropriate restrictions.").)

[4]     The ALJ also determined Plaintiff was limited to "[l]ifting up to 20 pounds occasionally, up to 10 pounds frequently; sitting up to 4 hours, standing and walking up to 4 hours with the option to alternate positions every 30 minutes; no kneeling, crawling, or climbing of ladders, ropes, or scaffolds; no exposure to potential hazards such as moving machinery or unprotected heights; only occasional overhead reaching bilaterally; and no more than occasional exposure to wetness or vibration." (Tr. 162.)

this determination, it appears from the record that the ALJ relied on the state agency medical consultants' notation of "B/L UE OVERHEAD OCC REACHING" (Tr. 1994), which the ALJ found to be "generally partially persuasive" and "more consistent than the opinions at Exhibits 2A and 4A." (Tr. 167–68.) However, the ALJ did not provide any explanation as to why Plaintiff's RFC does not include any weight restriction on "overhead lifting,"[5] nor did the ALJ evaluate the supportability or consistency of Dr. McPherson's opinion relating to overhead lifting.

Evidence in the record supports a limitation regarding overhead work. For example, Plaintiff noted in her Function Report that "[she is] unable to do any overhead reaching or lifting." (Tr. 321.) She again marked "lifting and reaching" as part of the affected conditions and further explained that "[shoulders] restrict [her] reaching and

---

[5]     The current RFC is less restrictive than Dr. McPherson's medical opinion. While the ALJ included a limitation for "overhead reaching," "overhead lifting" involves different physical capability. For Social Security disability, "reaching" is defined as "extending the hands and arms in any direction." *Kemp ex. Rel Kemp v. Colvin*, 743 F. 3d 630, 632 (8th Cir. 2014) (quoting *Selected Characteristics of Occupations*, App. C). "Lifting" is defined as "[r]aising or lowering an object from one level to another (including upward pulling)." *U.S. Dep't of Labor, Dictionary of Occupational Titles* ("DOT"), *App. C* (4th ed. 1991), 1991 WL 688702. This Court is not convinced that limiting Plaintiff to only occasional "overhead reaching" can be interpreted as precluding her from performing "overhead lifting" with weight limitation. *See Cruz v. Colvin*, No. SACV 12-1143-JPR, 2013 WL 4082714, at *3–4 (C.D. Cal. Aug. 13, 2013) (distinguishing RFC limitation of "overhead lifting" from "overhead reaching") ("[T]he ALJ did not preclude Plaintiff from Performing 'overhead reaching' – instead, he precluded her from performing 'overhead lifting' and 'overhead work.' . . . Had the ALJ intended to say that Plaintiff could perform no overhead 'reaching,' he likely would have simply inserted that limitation into the list of prohibited activities.").

lifting."[6] (Tr. 326.) And the medical records support finding that Plaintiff has weight restriction for overhead lifting. (*See, e.g.*, Tr. 1338 (December 28, 2016 Letter by Paul C. Matson, M.D.) (recommending a "permanent" restriction on Plaintiff's left shoulder to avoid left shoulder overhead lifting of more than 5 pounds); Tr. 444 (May 2017 Functional Capacity Evaluation ("FCE") form by John Hovde, P.T.) (indicating a weight limitation of "seldom 5 [pounds] for shoulder to overhead"); Tr. 989 (June 13, 2017, IME report by Scott McPherson, M.D.) (confirming that "lifting and limited overhead restrictions as outlined in the functional capacity evaluation would be appropriate for [Plaintiff's] left shoulder condition").) While the ALJ acknowledged that "Dr. Matson opined on January 22, 2016 that [Plaintiff] could lift 5 pounds overhead" (Tr. 164),[7] she did not address this issue any further.[8] Notably, in her discussion of the limitations

---

[6]     Plaintiff sustained a torn rotator cuff on left shoulder on January 25, 2015, that required surgical repair in April 23, 2015. (Tr. 598, 1678.) In March 2016, Plaintiff's MRI indicated a recurrent full-thickness rotator cuff tear. (Tr. 452.) An MRI from April 27, 2016, showed a "high-grade tear which may be full-thickness" on Plaintiff's right shoulder, and Plaintiff had a surgical repair in September 2016. (Tr. 450, 736.)

[7]     Dr. Paul C. Matson was Plaintiff's treating physician who operated on her shoulders. (*See* Tr. 624, 736.) Dr. Matson completed several Report of Work Ability forms in connection with Plaintiff's workers' compensation claim indicating Plaintiff's ability to "return to work with restrictions." (*See* Tr. 582–618.) From July 2015 to April 2016, Dr. Matson placed a weight restriction for Plaintiff's overhead reaching which changed from 2 pounds, 3 pounds, to 5 pounds. (Tr. 517, 493, 474, 582.) The ALJ discounted these restrictions as not persuasive in determining the RFC throughout the claim period. (Tr. 164.) The ALJ also noted that she found Dr. Matson's opinion from October 13, 2016, that "[Plaintiff] was unable to perform employment for the foreseeable future," not persuasive for multiple reasons. (Tr. 164–65.)

[8]     Instead, the ALJ noted the vocational expert's testimony that "assistant manager would not perform overhead reaching one-third of the day." (Tr. 169.) Contrary to this testimony, the record showed that Plaintiff's past work as a "stationstore assistant

provided from Plaintiff's functional capacity evaluation ("FCE"), the ALJ skipped the

"Shoulder to Overhead" limitation even though she addressed other weight restrictions

from that same form.[9] (*See* Tr. 167, 444.) As it stands, the RFC does not account for

Plaintiff's inability to lift certain weight overhead, provides no good explanation as to

why this limitation is not addressed in the RFC, and this Court is therefore left to

speculate on the basis for the ALJ's RFC determination in this regard.[10]

    The absence of addressing the medical opinion of Dr. McPherson, coupled with

the failure to address the specific weight limitation for overhead reaching leaves the

Court unable to determine whether the ALJ would have reached the same decision with

---

manager" included "reach[ing] over [her] head frequently and comfortably." (Tr. 674.) In addition, although the ALJ acknowledged Plaintiff's assertion that "[her] past work as an assistant manager required frequent overhead lifting," the ALJ dismissed this assertion stating that "this may have been how [Plaintiff] actually performed the job, but this finding concludes that [she] can perform the occupation as generally performed." (Tr. 169.)

[9]    The ALJ "found the [FCE] at [Tr. 443–46] to be partially persuasive in terms of occasionally lifting 10 pounds and seldom lifting between 20-30 pounds . . . ." (Tr. 167.) These weight limitations came from the FCE's notions reflecting what "[Plaintiff] can lift (lbs)," which stated as follows: "a. Floor to Waist: Seldom 20 pounds; Occasionally 10 pounds"; "b. Waist to Shoulder: Seldom 20 pounds; Occasionally 10 pounds"; "d. Waist to Waist: Seldom 30 pounds; Occasionally 15 pounds." (Tr. 444.) While the form also included "c. Shoulder to Overhead: Seldom 5 pounds" and nothing for Occasionally (*id.*), the ALJ made no mention of this limitation.

[10]    Courts in this circuit have refused to speculate about what the ALJ considered in their RFC determination when the ALJ is silent on a particular medically determinable impairment. *See Wyman v. Berryhill*, No. 17-CV-4174, 2018 WL 4016614, at *21 (D.S.D. Aug. 22, 2018) ("But the RFC analysis makes no mention of *any* affect that Ms. Wyman's migraine headaches, or lack thereof, on [sic] Ms. Wyman's ability to work. The court is left to speculate, therefore, about why this is so. This case must be remanded for clarification of this issue.").

the RFC and the following steps of analysis had she considered those things. Accordingly, the Court cannot conclude that this error was harmless, and remand is necessary to allow the ALJ to consider the RFC based on the relevant evidence in the record, including Dr. McPherson's opinion. On remand, the ALJ must reconsider and address all medical opinions when determining the RFC, including those that address an overhead lifting weight limitation. The ALJ must articulate how she considered the factors of supportability and consistency and point to substantial evidence in the record that supports the ALJ's decision for the RFC assessment. The ALJ must then reconsider steps four and five of the evaluation process.

Because the Court finds cause to remand based on this issue, the Court does not address Plaintiff's additional arguments presented in her brief.[11]

### ORDER

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

---

[11]     The Court notes, however, that the ALJ did mistakenly cited a wrong DOT code for Fast Food Service Manager (DOT 185.137-010) instead of Assistant Manager in her written decision. (Tr. 168.) This error is harmless because the ALJ's discussion itself refers to the relevant position of an assistant manager. (*Id*. ("[Plaintiff] is capable of performing past relevant work as an assistant manager DOT 185.137-010, light SVP-5.").) The hearing transcript also indicates that the ALJ referred to assistant manager as Plaintiff's relevant work. (*See* Tr. 70, 95–100.) Thus, "the ALJ's citing of the wrong DOT code was a simple mistake and not outcome determinative." *Alie v. Berryhill*, No. 4:16-CV-1353 JMB, 2017 WL 2572287, at *14 n.11 (E.D. Mo. June 14, 2017) (holding that ALJ's wrong citation to DOT code for laundry worker in the decision was a harmless error). On remand, however, the ALJ should cite the correct DOT code.

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 23) is **GRANTED IN PART**; and

2.      Defendant's Motion for Summary Judgment (Doc. No. 25) is **DENIED**;

3.      The case is **REMANDED** to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Memorandum Opinion and Order.

        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: August  9, 2022                          *s/ Becky R. Thorson*
                                               BECKY R. THORSON
                                               United States Magistrate Judge